215-0365-1700 v. Sodejo My name is Mike Roth and I represent the petitioner in this case. In this case, Petitioner Mr. Henry met his burden on each of the elements of establishing his workers' compensation claim. He met it and the decision should be reversed because the commission disregarded the unrebutted evidence. Because the facts are unrebutted, the standard of review is either... What facts are unrebutted? I'm sorry? What facts are... How is this... How is all the evidence unrebutted? And I was... In terms of... Well, there's two cases. And in terms of notice for the June 1, 2006 accident, the notice was that he testified that he told Mr. Manago and Mr. Carter, the nighttime supervisor, of the accident. Well, that's true, except that the commission found... How do you explain this? That no accident report was filed and the claimant made a contrary statement to his doctor. Right. So that couldn't... It can't be unrebutted, therefore. I mean, the testimony was unrebutted, but you can't say truly that the evidence was totally unrebutted. There is no requirement under the Act that a written report has to be filed. Under the application, the reporting of the file is either oral or written. In addition, the commission cited to the April 3, 2007 note from Dr. Young, and that note specifically said that he did not report the knee injury to the employer for peer retribution. To equate an employer with a supervisor, I think you cannot impeach his testimony based on that. An employer is not the same thing as a supervisor, I think. In Webster's dictionary, there are two different definitions. Layman's term... Layman parlance, when someone's talking about his employer versus who the supervisor is, there are two different things. Who's Young, the doctor? Dr. Young is the supervisor. Which statement did he make that allegedly contradicted his notice testimony? Which is... To Young. Did he make an allegedly inconsistent statement to Young? No. Okay. No, he didn't. And that is what I'm referring to, is that report for April 3. He never said he didn't report it to anybody. He never said he didn't report it to his supervisors. He said he didn't report it to his employer. So therefore... And that's on the first... There's two different claims you're talking about, right? Correct. Okay. Correct. So for the fact to be disputed, there has to be some evidence. So we met our burden in establishing that he reported the injury, that he gave notice to his supervisor. In S&H floor carpeting, the petitioner told Sandy, someone at the employer's office, about the injury a month after the accident. Sandy was not called in to revoke the testimony. The court found that notice was proper. In Gano, the claimant notified the foreman and the coworkers of the injury. Well, wait a minute. You said he didn't make an inconsistency. We have here, the claimant relied, the commission relied on the claimant's statement to Young, that he did not report the incident to his employer. Correct. And I'm saying that... That's not in Young's records? Well, it is. What I'm saying is that that is in the April 3, 2007 record, the initial record with Dr. Young. What I'm saying is that for it to be impeachable, for it to impeach his testimony that he reported it to his supervisor, they would have to be the same thing. The employer would have to equate to supervisor. They don't. So that is what I'm saying is that it can't be used to impeach his testimony. Why would he say employer? Because he told somebody. Why would he specifically deny giving notice to the employer if he gave it to somebody there? Some people, and that's in terms of everyday parlance, everyday people, how they speak. If you're talking about your employer, he may have been admitting that he didn't write it down, he didn't report it. These are fact-finding issues. So if the Commission interprets that as meaning no notice at all, and you're saying he may have meant something else, how do we review that issue and that determination? Do we just say, well, you must be right? The Commission misinterpreted that statement. It's not a misinterpretation. It's actually using the actual definition of the two words. And for it to be impeachable, they have to mean the same thing, and it wasn't. How does one give notice to a corporate employer? Typically, one would go to the HR department and provide... You go to your supervisor. You give notice to your supervisor. Notice to your supervisor is notice to the employer. No notice to the supervisor, no notice to the employer. Correct. So when you turn around and say we go to the dictionary, I think you've got to put it in context. If this is a corporate employer, when he says I gave no notice to my employer, the Commission could easily interpret it as saying you didn't give notice to anybody, or at least not a supervisor, because the act requires notice to the employer, not notice to the supervisor. Correct. And he did testify that he did give it to his supervisor. He testified that later on, but initially, according to records, at least, the Commission felt he told Young something totally inconsistent with that. Correct. Okay. In terms of... and because he gave notice to his supervisor, we believe that because they never left prejudice, that there was no... Yes, Your Honor. Yes, Your Honor. Because that... so in terms of that he suffered an injury, we believe that it was undisputed that he did suffer an injury. There's no dispute in terms of that fact. And also in terms of the causation between the right knee and the accident, both Dr. Young and the IME testified that the injury on June 1st caused his injury to his knee. That is undisputed. And they disregarded the FMLA paperwork that the respondent signed that said that Henry's medical condition was causally related to his work. What about the second notice on the second claim? That's also an issue, right? In terms of notice of the second injury, notice, again, well, to my... it's unrebutted. On March 27th... Well, it's unrebutted. Didn't he say he couldn't take it anymore? Yes, he said he couldn't take the pain to his knee and to his shoulder anymore after... and he had to see a doctor. He told Mr. Davis that. Well, how does that establish in and of itself it's a notice of an accident connected to work? Well, this was... I can't take it anymore. Right. This was after slamming a shovel all day on the 26th and then three times on the 27th. He told Mr. Davis, his supervisor, of the accident, and Mr. Davis told him not to return back to work because he had to... because they were still... they were still carpeting. This shows that the... under S&H... S&H, that even though this might not be perfect notice, as Your Honor was just referencing, even though it was not perfect, it did provide him with some notice of an accident, of some injury, of some condition that was causing him pain. But, son, maybe he was upset over the people he was working with, his job duties. Somebody walks in and says, I can't take it anymore. You construe that as notice of a work-related accident? Well, I believe the testimony was, I can't take the pain. He told them that it was the shoulder and the knee. And that he was... he told them he needed to see the doctor. So, he... and then the fact that he told Mr. Davis... Mr. Davis told him not to return back to work because they were still carpeting, that falls squarely with S&H, that they were aware that he was having problems. He gave the restrictions of his work, of no lifting, to Supervisor Aldridge. On April 6th, Dr. Young sent a notice to the insurance company asking for coverage for the treatment. Don't get too hung up on S&H as carrying the day for you, because in that case, the commission held they confer the nature of the injury from the constant work in the occupation he was doing at that time. Here, as we understand it, his job duties varied on a daily basis, right? Well, up until April... up until April... March 26th and 27th, it did... it did vary. He did heavy work. He did maintenance work. However, you have a pre-existing injury to the knee on June 1st, and you have the carrying of the tool belt on the shoulder for several years prior. Now, he was able to work through those years, through that pain. And on March 26th and 27th, he shoveled... he was removing the carpet all day long, shoveling, hitting it, slamming the shovel to remove the glue, bending his knee and pushing through with his body and his shoulder. That was the straw that broke the camel back. He was then unable to continue working, and he was unable to get treatment, which is the manifestation date of the injury. And so he... so in terms of constantly carrying a 10-pound bag, slamming the shovel all day long for a day and then three times another time, that, I believe, constitutes a repetitive trauma. Now, the Commission misapplied the law and it held that because he never complained during the four-and-a-half years about the shoulder and carrying the tool belt, that no injury occurred. Under Oscar Mayer, that finding contravenes what Oscar Mayer said in his decision. What if the Commission just didn't believe his testimony on these issues? What do you do with that? Well, credibility is within their province, yes. However, they have to have some basis not to believe his testimony. There's no basis not to believe that on March 27, 2007, that he did not injure himself or did not hurt his shoulder and his knee to the point where he could no longer work. There's no dispute that on that date he stopped working. There's no dispute that he told Mr. Davis what he said in his testimony. Not only that, but if the Commission finds there's no notice, or proper notice given as contemplated by the Act, then that's a finding you've got to overcome that. Because I was going to point out the procedural process in S&H is different because there, this is an important distinction, we upheld the Commission's finding on the inferring that the claimant's injury is work-related. Here, the opposite is the situation. The Commission felt found against the claimant on that issue and you're asking us to overturn that. So there's no deference given as S&H. You're in the opposite situation. Yes, and in terms of the standard of review, when the facts are undisputed, it's either a de novo standard, but under Johnson, the Second District refused to extend the clearly erroneous standard to the cases before your panel. However, so I believe that, yes, the manifest way of evidence applies to issues of facts, fact-finding, but when the facts are undisputed and it's just applying the facts to the statute, then it's either de novo or if you do... We'll have to make also a decision if we believe the facts in this case are totally undisputed. Yes, yes.  ...because they said that there was no evidence of a April... a March 27, 2007 incident in any of the records. That's totally incorrect. The April 18, 2007 MRI sheet talks about on March 27th, he was slamming the shovel with all his body at work while removing carpeting. On April 3rd, the history forum, while it does not state March 27th, it says that he had left shoulder and right knee pain using a scraper to remove carpeting, which caused him to go home, and he worked until pain was unbearable. The history was that he was, on June 1st, he had an injury and carrying a belt and using a scraper until he could no longer work anymore. The only time that he could no longer work anymore and was told to go home was March 27, 2007. The progress note, April 3rd, he had left shoulder pain for a year and increased pain when using a scraper to elevate the carpet, after which he was told to go home. The IME intake sheet says March 27, 2007. The response, January 26, 2011, to the IME states March 27, 2007. Can we go back to the knee injury in just a second? Yes, sir. I want to see if you can clarify something for me. The commission noted, was it true, that no one witnessed the alleged accident on June 1st, 2006? Is that correct? Correct, sir. And is it true that Klayman did not seek treatment for the knee for 10 months? Yes. He continued to work. He was able to work. He took it easy. The testimony was, and this is something that the commission also disregarded, said that he was able to go back to work full duty, doing everything. However, the testimony was that even though he went back to work full duty, he took it easy, he took it slower, he tried to do lighter jobs, he went to pain. When he did have lighter jobs, he rested. But he was able to continue to do the work. But he never saw a doctor for almost a year. Correct. Doesn't that weigh against his credibility? Some people work despite pain. Some people, you know. Yes, but can't you see why the commission would feel that that's evidence that weighs against in complaining about this injury? Right. But the IME, their IME, even though he didn't see a doctor, their IME even related the knee injury to the June 1, 2006, when his knee was trapped between the carpet. So just because he didn't treat for a year doesn't mean it didn't happen. Well, that's arguably true, yes. Counsel, your time is up. Okay. Thank you. Thank you, Your Honor. Counsel may respond. Good morning. May it please the Court and counsel, my name is George Cloutke. I represent Sodexo in this case. I believe this is a manifest weight of the evidence case. I believe that the commission had many sources of evidence that corroborated their decision, and we would ask that you affirm the decision of the Workers' Compensation Commission in full. Counsel indicated that Mr. Henry notified his employer or a supervisor or somebody of the accidents in June 1 of 2006, and the problem is that Mr. Henry didn't even testify to that. That when Mr. Monago came into the truck after he had already gotten up, that he told him that the supervisor hit him with a forklift truck. And his testimony with respect to the conversation with Mr. Carter was, I told him that the supervisor hit me with a forklift truck. That's not notice of an injury. So even if that occurred, which I'm not sure that the commission agreed that that occurred, but even if that did occur, it's still not notice. Couple that with the fact that he worked for 10 months without any medical treatment whatsoever, without a brace, without medications, without taking any, well, he took a vacation. He said he took a vacation for a couple of weeks in between there. Leads you to the conclusion that nothing occurred in this truck. And obviously the commission noted that there was an unwitnessed accident. There was no treatment for 10 months. He worked full duty. He told Dr. Young, the first opportunity, the first time he said anything to anybody that's to a medical provider was April 3 of 07.  So once he told that voluntarily, he tells Dr. Young that he didn't tell his employer. How's the commission supposed to say that notice was provided? I mean, it just, you know, and again, even if you go back and you take his testimony, which, you know, the case was tried April of 13, so we're many years from June of 06, and even if you take it at full value, he still didn't tell them that he hurt himself. He told them, it's like saying to your employer, I was standing on the stepladder and the stepladder broke. Or, hey, I lifted this piece of heavy equipment. Or one of your clerks comes in and says, I sat down on the chair and the chair broke. That's not an accident. That's not a report of an accident. That's not notice. Then you have 10 months of full duty. Clearly the industrial commission made the proper ruling in that case. What do we do with the comments that the commission made that he didn't call Mango, Carter, or Davis to testify? So what? He could have. Wait a minute. Is that a missing witness? Are they making an inference that they would have testified contrary to him had they been called? And is that proper? Yeah. No, I don't think they're making an inference that they would have. I don't think they're making an inference. All they're saying is he didn't prove his case. So if you already know that in the medical record, the first time your client sees a doctor, he says, I didn't tell my employer. You're going to have to prove notice. And his own testimony didn't do it. I'm sorry. That statement that they made that Justice Hoffman was referring to when they referenced the witnesses that weren't called, more accurately, isn't it the commission indicating that petitioner's testimony as to those two statements or items of testimony were uncorroborated? Yeah, his statements to those two people were uncorroborated, absolutely. Okay. So it sounds awkward when the petitioner or when the commission states petitioner did not call Monago, Carter, Davis to testify. It does make it sound like they're inferring something. But in context, it appears that they're simply stating that the petitioner's testimony on those two points was uncorroborated. I agree. I think it's a strategic decision by counsel. Well, it would be improper under the missing witness rule technically anyway, wouldn't it? Because there's no showing that the witness was under the claimant's control or not equally available to the respondent, right? So it's probably an incorrect application. Would you agree? Yeah, I would agree. I mean, I think they're just pointing the fact out that had those witnesses been called to testify, they would have considered whatever it is that they were going to say. I mean, maybe they weren't called because the conversations didn't take place. Well, that's exactly the inference. They can't draw that. You just locked yourself into a problem. They can't draw that inference. We do that. Excuse me. They can't draw that inference because that would be the missing witness instruction, and these people were not under his control. Right. So they could not draw that inference. I agree with that. I'm suggesting that the only person that testified of those conversations was Mr. Henry. Very interesting that they, especially as to the second case, they inserted the phrase that he didn't call Bruce Davis directly after the phrase where he testified that he told Davis, as if they're inferring that because he didn't call Davis, he was untruthful. Well, let's explore what he told Davis. I'm not interested in what he told Davis. I'm interested in whether they could rely upon his failure to call these witnesses to attack his credibility that he made the statement. Oh, no, I don't. I didn't take their decision that way at all. I do. I don't know what they inferred. All I know is their decision was that there was no accident. There's no evidence of an accident on March 27th. Well, we're not talking about an accident when we talk about Davis, Young, Carter, or Marengo. We're talking about notice. Right. Well, what did Mr. Henry say to Mr. Davis regarding the March 27, 2007 event? That's the notice. That has nothing to do with whether he called Davis as a witness or not.  He says... Then why are you talking about it? My question is relating to why did the commission comment upon his failure to cause Marengo, Carter, or Davis to testify? How is that relevant? There's no question the commission could say we didn't believe him when he said he told them or what he told them was not notice. That's not a problem. The problem is they're commenting upon his failure to call these witnesses who were not under his control. Right. And consequently, there can't be no adverse inference drawn from it. I'm not sure what was in their mind when they made that statement. Other than the fact that they're... Would it have been a proper statement, counsel, for the commission to say Tishner's testimony on this point was uncorroborated? Would that have been acceptable? Well, I think they did, in essence, say that. So I'm asking you, would that be permissible by the commission to comment on the lack of corroboration? Would that be acceptable? From any means, yes. Okay. It doesn't have to be somebody who was a supervisor or... He doesn't have to show that he asked somebody else to come in and testify. All that Tishner has to do is prove all aspects of his case. And he didn't do it. Well, certainly the commission could say that we don't believe the petitioner. Right. And his testimony is uncorroborated. Therefore, we find he has approved XYZ. Right. Agreed, agreed. And, again, what he said about March 27, 2007, and he didn't... He told his doctor, by the way, on April 3rd that his left arm had been hurting him for a year and his right knee for since the roll of carpet twisted his knee in June of 06. He didn't say anything about March of 07 until later. And he didn't tell anybody that he hurt himself. And he didn't say that there was any pain or anything. He just said, I can't take it anymore, and, you know, I need to go to a doctor. And Mr. Davis said, fine, go to the doctor. So, again, I believe that the commission made the correct decision in this case, and I would ask this court to affirm the commission in its entirety. Thank you, counsel. Counsel, you may reply. Thank you. The specific testimony that Henry testified to for the second case was that he told his coworkers that he could not take the pain anymore. And then on March 27, he testified that he advised his supervisor that he needed a doctor for his excruciating right knee and left shoulder pain. And that's on page 113 and 115 of the record. Davis told him to go to the doctor. And then between March 27 and April 4, 2007, Davis instructed him not to return to work until they were done with carpeting. That is notice under the Act. It's supposed to be liberally construed. And, therefore, I think there was notice on it. And, therefore, I think the commission erred when it found no notice for the March 27th injury. In terms of corroborating evidence, under Atlantic and Pacific, one can corroborate, one can recover even with uncorroborated evidence. I don't think anyone is suggesting that the commission couldn't have believed him. They just didn't. So, I mean, it's a manifest way standard. That doesn't mean there's no right answer. There's no one answer. The commission can go in either direction. The question is do they believe him or don't they? And they clearly didn't, in both cases, believe him. And there's enough reason in the first case as to why they didn't believe him. He never went for any medical treatment for 10 months. And the commission could very well determine that, based upon that, they didn't think any accident happened. In the second case, is it enough to go to your supervisor and say, my leg hurts, I want to go to the doctor? Is that notice that there has been an industrial accident for which you're entitled to recover? After doing activity such as carpeting and what he was doing, I believe so. I think the case law does support that, even though it's not perfect, it does show that the employer was aware, the supervisor was aware, of something that was happening. He had some information that the supervisor or employer could infer that an injury occurred, especially when the employer comes back and says, don't come back because we're still carpeting. And then he comes back with restrictions. And then Dr. Young sends a request to the work comp carrier asking for approval. And then he gets an FMLA document from Davis saying that you're off work because of an injury or condition related to work activity. So I believe when you take all those factors together, it would be beneath, I believe it was unrebutted that he gave notice at that time. And in terms of credibility, yes, it is within the manifest way of evidence. The commission has the prowess to determine that. But there has to be a basis for the, there has to be a basis for them not to believe him. You've said what you believe in terms of the first accident, that they did not, that they had reason not to believe it. I don't think treating for ten months is a basis. There was no one that testified that he did not suffer the injury, especially when the doctors say yes, even though it was, even though they knew of the delay, it was related. And then in terms of the second accident, no one contradicted that. I don't think he told them or that he injured himself. So for those reasons, I believe that, as well as the ones that are in our brief, I believe that the commission's decision was, should be reversed. Thank you for your time. Thank you, counsel, both for your arguments in this matter. I'll take that as an advisement. This position is a valid issue.